# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA ANDREWS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF FCI-SCHUYLKILL,<br><br>Respondent. | CIVIL ACTION NO. 3:25-cv-02399<br><br>(SAPORITO, J.) |

## ORDER

Joshua Andrews, a prisoner incarcerated at FCI-Schuylkill, has filed[1] a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. (Doc. 1). He contends that the method used by the Bureau of Prisons ("BOP") to assess his risk of recidivism violates the First Step Act ("FSA") and improperly forecloses his eligibility for prerelease custody. For the following reasons, the petition will be denied.

## I. BACKGROUND

On March 5, 2020, in the United States District Court for the

---

[1] Although the petition is accompanied by a typed "affidavit of service," the petition itself is unsigned, which would foreclose relief. *See* Fed. R. Civ. P. 11(a); 28 U.S.C. foll. § 2254, Rule 2(c)(5). Nonetheless, because it is apparent that Andrews would not be entitled to relief with a procedurally proper petition, we address the petition on the merits.

District of Massachusetts, Andrews was sentenced to 144 months imprisonment following a conviction for conspiracy to affect commerce by robbery. *See United States v. Andrews*, No. 1:17-CR-10272 (Doc. 85) (D. Mass.). He filed this petition on December 12, 2025, at which point his projected release date was December 13, 2027. Although he has participated in recidivism reduction programming while in prison, the BOP has deemed him to be at "high" risk of recidivism based on his age, the nature of his criminal history[2], and "incident reports" that he received in prison. This classification makes him ineligible for expedited placement in prerelease custody. *See* (Doc. 8-2); 18 U.S.C. § 3624(g)(1)(D).

In this petition, Andrews argues that because the BOP's scheme for assessing recidivism limits the credit an inmate can receive for prison programming, an "individual like [Andrews] will never be able to use time credits" toward prerelease custody, in violation of the FSA. He requests that the BOP be ordered "to reduce [his] scores consistent with his program participation" so that he will be classified as a "low" recidivism risk and thus become eligible for prerelease custody.

[2] Although the record does not describe the nature of Andrews's "extensive" criminal history, Andrews does not dispute the respondent's characterization of that history. *See* (Doc. 8 at 6, Doc. 8-6 at 2).

## II. Discussion

Although the parties dispute whether Andrews has properly exhausted administrative remedies, we address the petition on the merits because the record demonstrates that he is not entitled to habeas relief. *See Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010) (exhaustion may be excused "if an attempt to obtain relief would be futile or where the purposes of exhaustion would not be served").

The FSA allows eligible inmates who complete evidence-based recidivism programming or other "productive activities" to receive earned time credits toward expedited placement in pre-release custody. *See* 18 U.S.C. § 3632(d)(4)(A). Among other prerequisites for expedited placement, the inmate must have a "minimum" or "low" recidivism risk each of the last two times he was assessed, as determined under the PATTERN risk system, which "assigns a recidivism risk score of minimum, low, medium, or high risk." *See* 18 U.S.C. § 3624(g)(1)(D); *Brennerman v. Warden, FCI-Allenwood Low*, No. 3:24-CV-2029, 2025 WL 52469, at *1 (M.D. Pa. Jan. 8, 2025). An inmate's PATTERN score is based on numerical values assessed for various "risk items," including the inmate's age, criminal history, and prison misconduct record. The score

can be reduced by factors such as the inmate's completion of prison programming. *See* (Doc. 8-2, ¶ 6; Doc. 8-6; Doc. 8-8). The BOP must make such programming available to each prisoner "to ensure that . . . all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration." 18 U.S.C. § 3632(a)(5).

In essence, Andrews claims that regardless of the other factors relevant to a prisoner's recidivism risk, the BOP must offer prison programming that would be sufficient to make the prisoner eligible for expedited prerelease custody. However, the FSA only requires that inmates receive an opportunity to "reduce" their recidivism classification. *See* 18 U.S.C. § 3632(a)(5)(A). It does not require that completion of prison programming outweighs all other factors relevant to a recidivism assessment, or that every prisoner must receive a path to eligibility for prerelease custody. *See*, *e.g.*, *Kelly v. Warden of FCI-Schuylkill*, No. 1:25-CV-2143, 2026 WL 1471212, at *2 (M.D. Pa. May 26, 2026); *Delorenzo v. Nunley*, No. 7:23-CV-760, 2025 WL 2778139, at *6 (W.D. Va. Sept. 29, 2025) ("The statute requires that all prisoners have a meaningful opportunity to reduce their recidivism risk classification, not a meaningful opportunity to reduce their sentences."); *Pasha v. Carter*, No.

23-CV-2686, 2024 WL 4264904, at *4 (D. Md. Sept. 20, 2024).

A review of Andrews's PATTERN calculations indicates that he has been offered what the statute requires. As of October 30, 2025, Andrews had a "general score" of 60 and a "violent score" of 38, placing him at a "high" risk for recidivism. This included a reduction of 12 points from his general score and 4 points from his violent score for prison programming, which is the maximum possible reduction in that category. *See* (Docs. 8-6, 8-8). Andrews was 40 years old on October 30, 2025; he will receive an automatic reduction in score when he reaches the age of 41, if he has not already. Further, his score had been increased by 7 points because he received several "serious incident reports" in prison, including one incident report within the last 7-12 months. These scores will be reduced over time if he does not accrue another incident report. *See* (*id.*); *Green v. Hudson*, No. 23-3141, 2024 WL 960497, at *4 (10th Cir. Mar. 6, 2024) (prisoner who "lowered his general score by thirteen points and his violent score by six points" received the "meaningful opportunity" required by the FSA).

Although these reductions would not make Andrews eligible for prerelease custody, they would be sufficient to bring his recidivism risk

from "high" to "medium." *See* (Doc. 8-7). His progress is limited by his history of violent crimes, but the BOP's ongoing consideration of that history does not violate the FSA. *See Green*, 2024 WL 960497, at *4 ("Though the Bureau had to consider at least some factors within the prisoner's power to change, Congress didn't force the Bureau to blind itself to the obvious risks from convictions for violent offenses."). Ultimately, the fact that there is "not enough time for [Andrews] to reduce his risk level to minimum or low" before his scheduled release date does not entitle him to relief under the FSA. *Pasha*, 2024 WL 4264904, at *4.

## III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT** the petition (Doc. 1) is **DENIED**, and the Clerk is **DIRECTED** to close this case.

Dated: October 20, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge